IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO.: 2:22-cv-00112 |
| v. | ) |
| | ) |
| BAYPORT CREDIT UNION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, the United States of America ("United States"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. The United States brings this action under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, against BayPort Credit Union ("Defendant").

2. The purpose of the SCRA is to provide certain benefits and protections to servicemembers and individuals in military service, enabling servicemembers to fully devote themselves to the nation's defense.

3. Among the SCRA benefits and protections servicemembers have is a 6% cap on the interest rate, including fees (except for *bona fide* insurance), on financial obligations, such as retail installment contracts, incurred by individuals when they were not in military service but who later entered military service during the term of the contract. *See* 50 U.S.C. § 3937. To receive this benefit, a servicemember must submit a written notice and documentation of military service, such as a copy of military orders or a letter from a commanding officer. *Id*. §

3937(b)(1)(A).  In response, a creditor must forgive – not defer – interest greater than 6% per year, retroactive to the first day the servicemember was called to military service, and must reduce the periodic payment amount in accordance with the amount of interest forgiven.  *Id*. § 3937(a)(2)-(3) & (b)(2).

4. The SCRA also requires that a lender obtain a court order prior to repossessing an SCRA-protected servicemember's vehicle if, before entering military service, the servicemember took out the loan and made a deposit or an installment payment before entering military service.  *See* 50 U.S.C. § 3952.  The court may delay repossession or condition the repossession on the refunding of all or part of the servicemember's prior installments or deposits.  *See id*.  If the servicemember fails to make an appearance in the action, the court must appoint an attorney to represent the servicemember and order a stay of at least ninety days.  *See* 50 U.S.C. § 3931.  The court may also issue additional stays, require the lender to post a bond with the court, or issue any other orders the court deems necessary to protect the servicemember's rights.  *See id*.

5. By failing to obtain a court order prior to repossessing an SCRA-protected servicemember's motor vehicle, a lender deprives the servicemember of his or her federally protected right to have a court order repayment to the servicemember of all or part of the prior installments or deposits, stay the proceedings for a period of time as justice and equity require, or make any other equitable disposition to preserve the interests of all parties.  *See id.* § 3952(c).

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 50 U.S.C. § 4041.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant BayPort is headquartered and conducts business in the Eastern District of Virginia and because the events giving rise to the United States' claims occurred in this judicial district.

## DEFENDANT

8. BayPort is a National Credit Union Administration-insured credit union headquartered in Newport News, Virginia, with branch locations throughout the Tidewater area of Virginia.

## FACTUAL ALLEGATIONS

### SCRA INTEREST RATE REDUCTION REQUESTS

9. On December 2, 2015, prior to entering military service, a customer purchased a used 2013 Hyundai Accent from Tysinger Motor Co., Inc., in Hampton, Virginia, and financed the purchase through a retail installment sales contract with a dealership. The interest rate on the contract was 9.99%. The dealership assigned the contract to Defendant on December 10, 2015.

10. On September 18, 2017, the customer entered active duty service in the Army.

11. On December 20, 2017, the soldier requested, in writing, that Defendant reduce her interest rate to 6% and included a copy of her active duty orders with her request. She followed up several times with Defendant in March and April 2018 about her interest rate reduction request and again provided copies of her orders and written request to Defendant.

12. On April 3, 2018, a BayPort Collections Supervisor notified the soldier that reducing the interest rate would *increase* her monthly payment. The soldier provided the Collections Supervisor with information on the SCRA's interest rate benefit, which stated that the creditor must forgive, not defer, interest greater than 6% and that the creditor must *reduce* the amount of periodic payments due accordingly.

13. On April 19, 2018, Defendant reduced the soldier's interest rate to 6% for one year, but increased her monthly payment from $319.80 to $330.93. Defendant failed to apply the 6% interest rate reduction retroactively to September 18, 2017, the soldier's first date of SCRA eligibility.

14. After the soldier spoke with another BayPort Collections Supervisor on April 23, 2018, Defendant, on or about April 27, 2018, credited interest on her loan retroactive to her entry onto active duty date, but miscalculated the amount of interest credit due. Despite the interest rate reduction and interest credit, Defendant set the soldier's monthly payment at $319.80, the same as the amount set out in the contract.

15. Prior to entering active duty, the soldier also carried a balance on a BayPort credit card. In or around May 2018, Defendant reduced the interest rate on the soldier's credit card to 6%, but did not apply the reduction retroactively to her entry into active duty.

16. In response to a June 1, 2018, notice from the United States Attorney's Office for the Eastern District of Virginia ("USAO") stating that the USAO had opened an investigation to determine whether Defendant violated Section 3937 of the SCRA, counsel for Defendant produced Defendant's policies and procedures related to the SCRA's interest rate reduction provision and account records of servicemembers who had requested SCRA interest rate reductions.

17. The policies and procedures Defendant produced state that a servicemember must be deployed to a combat zone to qualify for a Section 3937 interest rate reduction. The SCRA contains no such requirement. The policies and procedures do not contain any guidance on how to process and apply an SCRA interest rate reduction request.

18. The account records produced revealed that since October 28, 2013, Defendant has violated the SCRA rights of at least twenty additional servicemembers by denying their requests for an interest rate reduction or by incorrectly implementing the required interest rate reduction. Of the twenty additional servicemembers, Defendant denied four servicemembers' requests because the servicemembers were not deployed to a combat zone. Defendant incorrectly applied the remaining sixteen servicemembers' 6% interest rate reductions. In some of these cases, Defendant failed to timely process the requested interest rate reductions. The account records did not reveal even a single instance where Defendant correctly implemented an SCRA interest rate reduction for an eligible account prior to the time the United States opened its investigation of Defendant.

**MOTOR VEHICLE REPOSSESSIONS**

19. Of the accounts with incorrectly applied interest rate reductions, one servicemember had obtained a loan for a 2015 Chevrolet Sonic on July 8, 2015, and made payments on the loan before he entered active duty in the United States Army on May 10, 2016.

20. On October 28, 2016, that soldier requested an interest rate reduction on his motor vehicle loan, which Defendant finally applied on March 9, 2017.

21. During the almost five months the soldier waited for Defendant to apply the interest rate reduction, he struggled to make and missed payments on the loan. Defendant's collections office sent collections letters to the soldier at his address at Fort Polk, Louisiana, and Defendant's collections office called the soldier about repossessing the vehicle. At the time of the calls, Defendant's collection office knew that the soldier was on active duty in the Army, and the soldier also informed the collections office of that fact.

22.     Despite knowledge of the soldier's military status, on or about August 25, 2017, Defendant, without a court order, repossessed the soldier's vehicle, which contained some personal items, in violation of Section 3952 of the SCRA.  Defendant's repossession records indicate that the vehicle was repossessed from Fort Polk, Louisiana.  Defendant subsequently sold the vehicle at auction.

23.     In response to a notice dated October 29, 2018, from the USAO stating that it had expanded its investigation to include possible violations of Section 3952 of the SCRA, Defendant produced its policies and procedures related to vehicle repossessions and an electronically searchable list of all vehicle repossessions executed by or on behalf of Defendant without obtaining a court order from June 1, 2013, to present.

24.     Defendant's policies indicate that "[p]rior to a repossession or foreclosure, the Credit Union will review the loan for SCRA eligibility by using the" Department of Defense Manpower and Data website, but say nothing about what to do if the database shows that the customer is in military service.

25.     The documents produced showed that since February 11, 2016, Defendant violated the SCRA rights of at least two additional servicemembers by repossessing their vehicles without a court order.

### SERVICEMEMBER CIVIL RELIEF ACT VIOLATIONS

**COUNT ONE: Violations of 50 U.S.C. § 3937 (Interest Rate Reductions)**

26.     The United States realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

27.     The SCRA limits the amount of interest that may be charged on certain financial obligations, including retail installment contracts, that were incurred prior to military service to

no more than 6% per year, including charges and fees, except for *bona fide* insurance.  *See* 50 U.S.C. § 3937(a)(1) & (d)(1).

28. Since August 13, 2018, in order to have the interest rate on a financial obligation such as a retail installment contract capped at 6% per year, a servicemember must provide the creditor with a written notice and a copy of either his or her military orders or "any other appropriate indicator of military service, including a certified letter from a commanding officer." 50 U.S.C. § 3937(b)(1)(A).  (Prior to August 13, 2018, the servicemember had to provide the creditor with a written notice and copy of his or her orders.  *See* 50 U.S.C. § 3937(b)(1)(A) (2003).)  The servicemember may provide the notice and orders or other indicator of military service to the creditor up to 180 days after the end of his or her military service.  *See* 50 U.S.C. § 3937(b)(1)(A).

29. In response to a properly made request for SCRA interest rate benefits, a creditor must forgive – not defer – interest greater than 6% per year.  *See* 50 U.S.C. § 3937(a)(2).  The creditor must forgive this interest retroactively back to the date the servicemember was called to military service or, for members of a reserve component, back to the date the servicemember received military orders to report for military service.  *See id*. at §§ 3937(b)(2) & 3917(a).  The creditor is required to reduce the periodic payment amount in accordance with the amount of interest forgiven.  *See id*. at § 3937(a)(3).  For all obligations other than mortgages, including retail installment contracts, the interest rate cap must remain in effect for the duration of the period of military service.  *See id*. at §§ 3937(a)(1)(B) & 3917(a).

30. Defendant has engaged in a pattern or practice of violating 50 U.S.C. § 3937 by failing to limit the interest rate on pre-service obligations obtained by SCRA-protected

servicemembers to 6% per year after the servicemembers provided the documentation required by the SCRA.

31. Defendant's failure to properly implement the twenty-one servicemembers' interest rate cap requests impacted those servicemembers' budgets and risked distracting those servicemembers from their duties in furtherance of the defense needs of the United States. As a result, Defendant's failures to limit the interest rate of SCRA-protected servicemembers to 6% in accordance with the SCRA raise issues of significant public importance.

32. The twenty-one servicemembers who did not receive accurate and/or timely SCRA interest rate benefits from Defendant are "person[s] aggrieved" pursuant to 50 U.S.C. § 4041(b)(2) and have suffered damages as a result of Defendant's conduct.

33. Defendant's conduct was intentional, willful, and taken in reckless disregard for the rights of servicemembers.

**COUNT TWO: Violations of 50 U.S.C. § 3952 (Vehicle Repossessions)**

34. The United States realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

35. The SCRA provides that "[a]fter a servicemember enters military service, a contract by [a] servicemember for . . . the purchase of real or personal property (including a motor vehicle);" and "for which a deposit or installment has been paid by the servicemember before the servicemember enters military service," "may not be rescinded or terminated for a breach of terms of the contract . . . nor may the property be repossessed for such breach without a court order." 50 U.S.C. § 3952(a).

36. Servicemembers and their families rely heavily on the use of their vehicles, and loss of those vehicles can create major distractions that can impede military readiness. As a

result, Defendant's failures to obtain court orders prior to repossessing motor vehicles owned by SCRA-protected servicemembers raise issues of significant public importance.

37. The three SCRA-protected servicemembers whose vehicles were repossessed without a court order are "person[s] aggrieved" pursuant to 50 U.S.C. § 4041(b)(2) and have suffered damages as a result of Defendant's conduct.

38. Defendant's conduct was intentional, willful, and taken in reckless disregard for the rights of servicemembers.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court enter an ORDER that:

1. Declares that Defendant's conduct violated the SCRA;
2. Enjoins Defendant, its subsidiaries, agents, employees, and successors, and all other entities in active concert or participation with Defendant, from:
    a. failing or refusing to timely and accurately lower the interest rate on pre-service obligations obtained by SCRA-protected servicemembers to 6% per year after being provided with written notice, military orders, and/or other appropriate indicia of military service;
    b. repossessing the motor vehicles of SCRA-protected servicemembers without court orders, in violation of 50 U.S.C. § 3952;
    c. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of Defendant's illegal conduct to the position he or she would have been in but for that illegal conduct; and

    d.  failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any illegal conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's illegal conduct;

3. Awards appropriate monetary damages to each identifiable victim of Defendant's violations of the SCRA, pursuant to 50 U.S.C. § 4041(b)(2); and

4. Assesses civil penalties against Defendant in order to vindicate the public interest, pursuant to 50 U.S.C. § 4041(b)(3).

The United States further prays for such additional relief as the interests of justice may require.

Respectfully submitted,

Dated: March 10, 2022

MERRICK GARLAND
Attorney General

JESSICA D. ABER
United States Attorney
Eastern District of Virginia

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

LAUREN A. WETZLER
Chief, Civil Division
Assistant U.S. Attorney

SAMEENA SHINA MAJEED
Chief, Housing and Civil
Enforcement Division

       /s/
DEIRDRE G. BROU
Assistant U.S. Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3770
Fax: (703) 299-3983
Email: deirdre.g.brou@usdoj.gov

ELIZABETH A. SINGER
Director, U.S. Attorneys' Fair
Housing Program

ALAN A. MARTINSON
Trial Attorney, U.S. Department of Justice,
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, NW – 4CON
Washington, DC 20530
Tel: (202) 616-2191
Fax: (202) 514-1116
Email: alan.martinson@usdoj.gov

ATTORNEYS FOR PLAINTIFF